UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JAMES LUKE HARLEY,                    : CIVIL ACTION NO. 3:CV-05-0414
                                      :
            Plaintiff                 : (Judge Nealon)
                                      :
                                      :                **FILED**
    v.                                :              **SCRANTON**
                                      :
PENNSYLVANIA DEPARTMENT               :              MAR 21 2006
OF CORRECTIONS, et al.,               :
                                      :          PER _____
            Defendants                :              DEPUTY CLERK

## **MEMORANDUM AND ORDER**

James Luke Harley ("Harley"), an inmate confined in the State Correctional

Institution, Waymart, Pennsylvania ("SCI-Waymart"), filed this pro se civil rights

action pursuant to 42 U.S.C. §1983. He claims that he has received a reduction in his

sentence which Defendants refuse to acknowledge. (Doc. 1, complaint). The named

Defendants are the following employees of the Department of Corrections ("DOC"),

Jeffrey Beard, DOC-Secretary; Raymond Colleran, SCI-Waymart Superintendent;

Paul Delrosso, SCI-Waymart Programs Director; Vito Cassella, SCI-Waymart Inmate

Records Manager; Diane Piasecki, SCI-Waymart Corrections Records Specialist; Carl

Pucci, SCI-Waymart Block Unit Manager; Milton Friedman, SCI-Waymart Block

Unit Manager; Suzzette McMonagle, SCI-Graterford Records Specialist; Kathy

Manley, SCI-Waymart Drug and Alcohol Treatment Specialist; Laurie Hess, SCI-Waymart Sex Offender/Drug and Alcohol Treatment Specialist; Joe Grillo, SCI-Waymart Sexual Offender Treatment Specialist; Robert Long, SCI-Waymart Corrections Counselor; Vivian Miller, Philadelphia Clerk of Courts; and Carolyn Engal Temin, Philadelphia Court of Common Pleas Judge.  By Order dated February 7, 2006, Defendants Temin and Miller were dismissed from the action. (Doc. 36).

Presently before the Court is the remaining Defendants' motion for summary judgment.[1] (Doc. 19). This  motion is fully briefed and is ripe for disposition.  For the reasons set forth below, the Defendants' motion for summary judgment will be granted.

**Standard of Review**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

---

1. Defendants' motion was initially filed as a motion to dismiss. (Doc. 19).  Because matters outside the pleadings, which could be not be excluded, were presented to the Court, by Order dated February 7, 2006, Defendants' motion to dismiss was converted to a motion for summary judgment. (Doc. 36).

matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence

of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no

<u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-

48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would

affect the outcome of the case under applicable substantive law. <u>Anderson</u>, 477 U.S.

at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue

of material fact is "genuine" if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514,</u>

<u>United Brotherhood of Carpenters and Joiners of America</u>, 927 F.2d 1283, 1287-88

(3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court

must view the facts and all reasonable inferences in favor of the nonmoving party.

<u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v. Consolidated Rail</u>

<u>Corporation</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse Electric</u>

<u>Company</u>, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment,

however, the nonmoving party may not rest on the unsubstantiated allegations of his

or her pleadings.  When the party seeking summary judgment satisfies its burden

under Rule 56(c) of identifying evidence which demonstrates the absence of a

genuine issue of material fact, the nonmoving party is required by Rule 56(e)[2] to go

beyond the pleadings with affidavits, depositions, answers to interrogatories or the

like in order to demonstrate specific material facts which give rise to a genuine issue.

Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the

---

2.Harley was provided with copies of M.D. Pa. Local Rules 7.1 through 7.8, Local
Rule 26.10, and Federal Rule of Civil Procedure 56(e).  In relevant part, Rule 56(e)
states:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleading, but the adverse
> party's response, by affidavits or as otherwise provided in this rule, must
> set forth specific facts showing that there is a genuine issue for trial.  If
> the adverse party does not so respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

Local Rule 7.4 provides in relevant part:

> All material facts set forth in the statement required
> to be served by the moving party will be deemed to be
> admitted unless controverted by the statement required
> to be served by the opposing party.

(See Doc. 4, Standing Practice Order).

4

motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

**Statement of Facts**

From the pleadings, declarations and exhibits submitted therewith, the following facts can be ascertained as undisputed.

In 1986, Harley was arrested and charged with, inter alia[3], two counts of rape, one count of involuntary deviate sexual intercourse, two counts of robbery, one count of possession of a weapon with intent to commit a crime and one count of aggravated assault, for a total of seven charges. (Doc. 40, Criminal Action Docket Sheet). On January 20, 1987, Harley entered a plea of guilty to the charges listed above. Id.

---

3. Plaintiff's six other charges, CP 8604-1419, 1421, 1423, 1424, and 1427 were nolle prossed. (Doc. 22, Commitment Order).

On March 17, 1987, Harley was sentenced on the seven charges as follows:

CP 8604-1426       Rape – 72 to 180 months in a state correctional institution. (Doc. 1, complaint, Ex. A, May 12, 2003 letter and Doc. 40, Criminal Docket Sheet).

CP 8604-1425       Involuntary Deviate Sexual Intercourse - 72 to 180 months in a state correctional institution consecutive to 8604-1426. Id.

CP 8604-1422       Robbery – 72 to 180 months in a state correctional institution  consecutive to 8604-1425.  Id.

CP 8607-2113       Rape – 72 to 180 months in a state correctional institution, to run consecutive to 8604-1422.  (Doc. 22, Commitment Orders).

CP 8607-2115       Robbery - 72 to 180 months in a state correctional institution, to consecutive to 8607-2113.  (Doc. 22, Commitment Orders).

CP 8607-2119       Aggravated Assault – 18 to 120 months in a state correctional institution, to run consecutive to 8607-2115.  (Doc. 22, Commitment Orders).

CP 8607-2118       Possession Instrument of Crime – 18 to 60 months in a state correctional institution, to run consecutive to 8607-2119.  (Doc. 22, Commitment Orders).

Harley's total sentence of thirty-three (33) to ninety (90) years, was directed "to commence in Farview State Hospital for commitment of 90 days under Sec. 304 via 401 of Mental Health Proc. Act." (Doc. 40, Criminal Docket Sheet).  On June 23,

1987, Harley's mental health status was reviewed, and he was recommitted to Farview State Hospital for another ninety (90) days. Id. Harley remained in the Farview State Hospital until October 4, 1988. Id.

On October 4, 1988, Harley's Mental Health Commitment was terminated, and he was ordered to serve the remainder of his sentence at SCI-Graterford. (Doc. 22, Commitment Order; Doc. 40, Criminal Docket Sheet). Harley was also given credit for the time he served as a patient at Farview State Hospital. Id.

On October 26, 1988, Harley was discharged from the Farview State Hospital and placed in SCI-Graterford. (Doc. 40, Admission/Discharge Record). His Admission/Discharge Record reflected all seven of Plaintiff's criminal charges, as well as his sentence of 33 to 90 years. Id. Upon admission to SCI-Graterford, Plaintiff's Sentence Status Summary reflected only three of the seven charges and reported his sentence as 18 to 45 years. (Doc. 22, Sentence Status Summary).

On April 6, 1989, Harley was transferred to the SCI-Camp Hill, and his Sentence Status Summary continued to reflect only three sentences and a total sentence of 18 to 45 years. Id. On March 8, 1994, Harley was sent to the SCI-Mahanoy, with the same Sentence Status Summary. Id. On June 10, 1997, Plaintiff was removed to SCI-Waymart. Id.

7

On September 1, 2001, Plaintiff entered SCI-Waymart's Sexual Offenders Treatment Program (SOTC). He claims that "at all relevant times hereto, plaintiff was and remains a SOTC student, misconduct free and program compliant." Id. at ¶ 14.

On May 1, 2002, pursuant to a request concerning the accuracy of the three charges contained in Plaintiff's Status Summary, the records department of SCI-Waymart was informed by the Philadelphia County District Attorney's Office that Harley was actually sentenced on March 17, 1987 to a total of seven charges. (Doc. 22, Ex. D, May 1, 2002, letter). Subsequently, in December, 2002, the SCI-Waymart records department received certified copies of the court commitment papers for the four additional crimes. (Doc. 22, Ex. E, Declaration of Joseph Chiumento, SCI-Waymart Records Supervisor, at ¶ 5).

On March 14, 2003, the Secretary of the Board of Probation and Parole wrote to the Sexual Offenders Assessment Board, advising them that Harley was scheduled for a parole interview with the Parole Board in November, 2004.

On March 31, 2003, "Version 2" of Harley's Sentence Status Summary was issued. (Doc. 1, Ex. C, Sentence Status Summary). It was "created to include additional sentences." Id.

8

On April 1, 2003, Plaintiff met with members of SCI-Waymart's Sex Offender Treatment Community Staff, which consisted of Defendants Carl Pucci, Kathy Manley, Joe Grillo and Laurie Hess.  He states that "it was during this meeting that the Defendants gave plaintiff his first notice they had received a new Sentence Summary Status Report [] which indicated plaintiff's sentence was, again, 33-90 years."  Id. at ¶ 15.  Subsequent to the April, 2003 meeting, the Plaintiff contacted Judge Temin as to his sentence.

On May 12, 2003, Judge Temin's law clerk wrote to Plaintiff, enumerating his sentence as follows:

CP 8604-1426   Rape – 72 to 180 months in a state correctional institution
CP 8604-1425   Involuntary Deviate Sexual Intercourse – 72 to 180 months in a state correctional institution consecutive to 8604-1426
CP 8604-1422   Robbery – 72 to 180 months in a state correctional institution consecutive to 8604-1425
CP 8607-2113   Rape – 72 to 180 months in a state correctional institution consecutive to 8604-1422
CP 8607-2115   Robbery – 72 to 180 months in a state correctional institution consecutive to 8607-2113
CP 8607-2119   Aggravated Assault – 18 to 120 months in a state correctional institution consecutive to 8607-2115
CP 8607-2118   Possession Instrument of Crime – 18 to 60 months in a state correctional institution consecutive to 8607-2119

(Doc. 1, Ex. A, May 12, 2003 letter).  Plaintiff's total sentence was computed as 396 months to 1,080 months, or 33 years to 90 years.  Id.

9

On June 16, 2003, Plaintiff retained Attorney Paul Paterson to "locate written

verification/documentation which might evidence Judge Temin's intention to reduce

[his] sentence." (Doc. 1, Ex. H, p. 2).

On March 12, 2004, Attorney Patterson wrote to Plaintiff concerning a

telephone conversation he had with Mr. Vito Casella, Records Manager for SCI-

Waymart. (Doc. 1, Ex. F). Based on Mr. Casella's explanation, Attorney Patterson

explained the inaccuracy in recording Plaintiff's sentence as follows:

> In November 1997 you applied for commutation. While processing your
> request for commutation it was discovered that your actual sentence was
> 33 years to 90 years. Mr. Casella insisted on receiving actual court
> documents that were sealed. You refused to accept photocopies and/or
> faxes regarding your sentence. He described for me a 3-year process
> where he wrote and/or called many people to verify your sentence. He
> noted that it was difficult to receive information from Philadelphia
> regarding a case and sentencing, which occurred in 1987. At any rate,
> Mr. Casella is now satisfied that your sentence has been correctly
> calculated at 33 to 90 years. This is based on actual court documents.
> Mr. Casella is certainly willing to consider any additional information
> that we may provide him. However, he needs actual court documents.

(Doc. 1, Ex. F). Attorney Paterson further suggested to Plaintiff that:

> It is possible that a clerical mistake initially caused your sentence to be
> calculated incorrectly. If this is the case I doubt there is any recourse.
> However, if there was a second court order changing your sentence from
> 33 years to 90 years to 18 years to 45 years we need to find that order. In
> this regard, please provide me with the information requested.

10

<u>Id</u>.

In July, 2004, Plaintiff met with Mr. Dennis Burke, a representative of the

Probation and Parole Sex Offender Assessment Board.  He claims that Mr. Burke

"advised plaintiff that while he was prepared to evaluate him pursuant to the Parole

Board's request [], he was unable to complete the assessment procedure because

plaintiff's institutional file now indicated his sentence had been recomputed to 33-90

years . . . [and] it would now be premature to complete the assessment." (Doc. 1, p.

10, ¶ 24).  However, he "informed plaintiff that, should his sentence discrepancy be

favorably resolved, the assessment procedure could be completed at that time." <u>Id</u>.

On February 25, 2005, Plaintiff filed the instant action.  He states that

sometime between October 26, 1988 and October 25, 1989, he "received notification

from the Clerk of Quarter Sessions of Philadelphia County Court indicating his

sentence had been modified from the original 33-90 years, to 18-45 years." (Doc. 1,

p. 6, ¶ 6). Plaintiff claims, however, that his "copy of the notification was confiscated

by prison guards during the Camp Hill riots." <u>Id</u>.

He further contends that "as a result of action and inactions of the defendants

here complained of, he was deprived of his right to apply for parole at the earliest

possible opportunity, which preclusion was in violation of his civil and constitutional

11

rights." (Doc. 1, p. 11, ¶ 27). He claims that Defendants, knew, or should have

known that his sentence was incorrectly recorded and that they should have

communicated this to him as soon as reasonably possible. Id. at ¶ 26. Plaintiff seeks

compensatory and punitive damages, as well as to have this Court or, Judge Temin,

declare his sentence is 18 to 45 years. (Doc. 1, p. 17).

**Discussion**

It is well-settled that prisoners cannot use § 1983 to challenge the fact or

duration of their confinement or to seek immediate or speedier release. Preiser v.

Rodriguez, 411 U.S. 475 (1973). The United States Supreme Court ruled that a

constitutional cause of action for damages does not accrue "for allegedly

unconstitutional conviction or imprisonment, or for other harm caused by actions

whose unlawfulness would render a conviction or sentence invalid," until the plaintiff

proves that the "conviction or sentence has been reversed on direct appeal, expunged

by executive order, declared invalid by a state tribunal authorized to make such

determination, or called into question by a federal court's issuance of a writ of habeas

corpus." Heck v. Humphrey, 512 U.S.477 (1994). "The complaint must be dismissed

unless the plaintiff can demonstrate that the conviction or sentence has already been

invalidated." Id.

12

Although Harley argues that his sentence has been commuted by Philadelphia County, there is no evidence of record of such commutation.  Nor has Harley been able to produce any evidence of a commutation notice from Philadelphia County. Thus, because there is no indication in the record that there has been a prior adjudication pertaining to Harley's alleged unlawful sentence, he cannot, under Heck, maintain a cause of unlawful imprisonment until the basis for that imprisonment is rendered invalid.

Moreover, to the extent that Harley is attempting to raise a constitutional deprivation because he could not be assessed for parole in July, 2004, "[t]here is no constitutional right or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 464 (1981)(quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)).  While "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," Sandin v. Conner, 515 U.S. 472, 483-84 (1995), the Pennsylvania Supreme Court has long held that "a denial of parole does not implicate a constitutionally protected liberty interest." Coady v. Vaughn, 564 Pa. 604, 770 A.2d 287, 291 (Pa. 2001); see also Rogers v. Pa. Bd. of Prob. & Parole, 555 Pa. 285, 724 A.2d 319, 322-23 (Pa. 1999)(affirming Parole Board's discretion to grant or deny parole because "parole is a

13

matter of grace and mercy shown to a prisoner who has demonstrated to the Parole Board's satisfaction his future ability to function as a law-abiding member of society upon release before the expiration of the prisoner's maximum sentence").

Accordingly, Defendants' motion for summary judgment will be granted.

An appropriate Order will be entered.


Date:   March 21, 2006                          s/ William J. Nealon
                                                **United States District Judge**

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JAMES LUKE HARLEY,           : CIVIL ACTION NO. 3:CV-05-0414
                                     :
           Plaintiff             : (Judge Nealon)
                                       :
       v.                                   :
                                       :
PENNSYLVANIA DEPARTMENT      :
OF CORRECTIONS, et al.,           :
                                       :
           Defendants         :

## ORDER

AND **NOW**, this 21st day of **MARCH, 2006,** for the reasons set forth in the

accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1.     Defendants' motion for summary judgment (Doc.19) is
       **GRANTED**. Judgment is hereby entered in favor of the
       Defendants and against the Plaintiff.

2.     Plaintiff's motion for appointment of counsel (Doc. 37) is
       **DISMISSED** as moot.

3.     The Clerk of Court is directed to **CLOSE** this case.

4.     Any appeal taken from this order will be deemed frivolous,
       without probable cause, and not taken in good faith.

s/ William J. Nealon
**United States District Judge**

15